In the Matter of the Testamentary **TRUST** of Joseph L. **DANIEL.**

The **REGENTS OF the UNIVERSITY OF OKLAHOMA, Plaintiff in Error,**

v.

**H. E. BAILEY, Dr. C. Q. Smith and Earl Welch, Trustees, Defendants in Error.**

No. 42489.

Supreme Court of Oklahoma.

March 3, 1970.

David Swank, Norman, for plaintiff in error.

Shirk, Withington, Work & Robinson, by George H. Shirk, Oklahoma City, for defendants in error.

DAVISON, Justice.

H. E. Bailey, Dr. C. Q. Smith and Earl Welch, Trustees, were petitioners and The Regents of the University of Oklahoma was respondent in the trial court. We will refer to them respectively as the Trustees and the Regents.

Trustees instituted this action in the lower court alleging they were the duly acting Trustees of the Testamentary Trust of Joseph L. Daniel; that the trust had accomplished the purpose for which it was created; and that the term of the trust had expired. Trustees asked the court to assume general superintending power over the trust for the purpose of terminating the trust and transferring the assets thereof to the Trustees of the Police Welfare Fund of the City of Oklahoma City.

On the same day, but at a later hour, the Regents filed suit against the Trustees alleging, on the grounds hereinafter set out, that the Trustees were not in fact the lawful Trustees. The two cases were consolidated and the Regents filed a response asking the court to assume general superintending power over the trust, remove the Trustees, and appoint substitute trustees.

The decree of the trial court found that the Trustees were the rightful and lawful Trustees of such trust, and directed the Trustees to make final liquidation of the trust by delivering all assets thereof to the Police Welfare Fund.

The Regents have appealed and present one proposition of error, that the Trustees were not the real and lawful Trustees of the trust.

There is no dispute as to the facts. On January 10, 1941, Joseph L. Daniel died leaving a will which was duly probated and distribution was made in accordance with the terms thereof. The will provided that $5000.00 of the proceeds of a life insurance policy be paid "to a set of trustees composed of the Chief Justice of the Supreme Court of the State of Oklahoma, the City Manager of Oklahoma City, if that office then exists, and if not, then the Mayor of Oklahoma City, and the President of Oklahoma City University of Oklahoma City" with instructions to invest the sum and use the income to pay for a lecture once a year at the University of Oklahoma on the subject of "What is the Best Form of Government for the Happiness of Man" and to pay for printing and distributing copies of the lecture.

The will also provided that the trust should continue for a period of twenty-five years, and that:

"* * * If at any time after twenty-five years the said trustees, or the majority of them, shall be of the opinion that it is not worth while to continue said trust for said purpose any longer, then the said trustees, after the expiration of said twenty-five years are hereby authorized to terminate said trust and to pay and deliver said trust fund of $5,000.00 to some charitable organization who will use the same without waste and without absorption by staff expense, for the amelioration of want and suffering."

The $5000.00 was paid to the three persons who then occupied the above described positions, to-wit: H. E. Bailey, City Manager of Oklahoma City; Dr. C. Q. Smith, President of Oklahoma City University; and Earl Welch, Chief Justice of the Supreme Court; being the same petitioning Trustees herein. The Trustees met on June 18, 1941, and adopted rules for administration of the trust, in which it was provided that no Trustee should receive or be paid any compensation for his trust services.

Thereafter, the exact time not being shown, but within only a few years, H. E. Bailey left the office of City Manager,

and Earl Welch ceased to be Chief Justice of this Court. Also Dr. C. Q. Smith ceased to be President of Oklahoma City University many years prior to the filing of this action in 1966.

During all of the intervening years, after the death of Mr. Daniel and the trust became active, the Trustees administered the trust fund, through safe investments and expending the income for trust purposes, so that the principal thereof was more than preserved. During this time twenty-one lectures in proper form and content consistent with the trust purposes were presented in cooperation with the University staff. The parties agree that the years in which lectures were not given were because of special situations precluding such presentations. Eighteen of the lectures were printed by the University at the expense of the trust. It appears that there is no dispute that although the University had been paid to print the balance of the lectures the printing had not been done, and had not mailed (distributed) some lectures for which it had received postage money from the Trustees. (The judgment directed that this money be refunded to the Trustees).

The record shows that during all of this time no person or body, including the University of Oklahoma, ever questioned the status or authority of the Trustees to administer the trust, until about sixty days before this action was filed, when the President of Oklahoma University raised the question.

The trial court found and adjudged that H. E. Bailey, Dr. C. Q. Smith and Earl Welch, were the rightful and lawful Trustees; that they had properly and faithfully discharged their duties; that the purpose of the trust had been accomplished; and that the trust funds should be transferred to the Police Welfare Fund as a qualified recipient under the terms of the will. The Trustees and the attorneys herein waived any claim to fees. The trial judge orally stated that the

named persons were Trustees de facto or de jure.

■ The Regents contend that under the will provisions Bailey, Smith and Welch became Trustees by virtue of the fact that they held the offices named in the will, but that when they ceased to occupy such offices they were no longer entitled to be Trustees, and that the position of Trustee should have passed to their respective successors in office.

The Trustees contend that they lawfully continued as Trustees after they left office, but that in any event they were de facto Trustees and the lower court had correctly assumed supervision of the trust and approved the termination of the trust.

It appears, from the authorities cited by the parties, that there may be a division of authority as to whether designation of a public officer as a trustee means he takes the trust as an individual and that the trust does not devolve on his successor in office. See 90 C.J.S. Trusts § 204, p. 133, which states that such a designation of trustee is ordinarily construed to that effect, citing Inglis v. Trustees of Sailor's Snug Harbor (1830) 3 Pet. 99, 7 L.Ed. 617. But see Beardsley, Ex'r. v. Selectmen of Bridgeport (1886), 53 Conn. 489, 3 A. 557, and Beidler v. Dehner (1917), 178 Iowa 1338, 161 N.W. 32, in which the courts stated the trust continued in the office holder and his successors as trustees.

In the present case we need not expressly determine which of the above propositions is correct. The record, supra, reflects that the Trustees did occupy the offices named in the will and that they assumed the position of Trustees. Thereafter for the full twenty-five year term of the trust they performed all of the duties of the Trustees and acting under the terms of the trust determined that the trust had accomplished its purpose and should be terminated. The University of Oklahoma during all of this time accepted the benefits of the Trustees' administration of the trust without questioning the position of the Trustees until about 60

days prior to the Trustees' filing of this action.

It is our conclusion that under these circumstances the named persons (Trustees), if not de jure Trustees, were de facto Trustees, and that their acts were entitled to all of the validity of acts of de facto officers.

In Blair v. Bishop's Restaurants, 202 Okl. 648, 217 P.2d 161, 164, we stated that the acts of a de facto officer of a corporation are binding on the corporation and its stockholders where the same act, if performed by a de jure officer, is authorized by the by-laws of the corporation.

And in Sheldon v. Green, 182 Okl. 208, 77 P.2d 114, we held that while mere possession of a public office was not sufficient to make the incumbent a de facto officer, possession plus color of title to the office, if the office actually exists, was considered sufficient.

Furthermore, it is important that the trial court determined that the trust had accomplished its purpose, approved the Trustees' administration of the trust, and decreed the termination of the trust and transfer of its assets to the Police Welfare Fund.

Title 60 O.S.1961, § 175.49, of the Oklahoma Trust Act provides that when the purpose for which an express trust was created ceases, the estate of the trustee also ceases.

All parties asked the trial court to assume superintending power over the trust.

Title 60 O.S.1961, § 175.23, of the Act, provides in part as follows:

"A. The district court shall have original jurisdiction to construe the provisions of any trust instrument; to determine the law applicable thereto; the powers, duties, and liability of trustee; *the existence or nonexistence of facts affecting the administration of the trust estate*; to require accounting by trustees; to surcharge trustee; *and in its*

*discretion to supervise the administration of trusts;* and all actions hereunder are declared to be proceedings in rem." (emphasis supplied)

Under the circumstances and the above statutory provisions the trial court was fullly empowered to render the judgment.

Affirmed.

IRWIN, C. J., BERRY, V. C. J., and WILLIAMS, BLACKBIRD, JACKSON, HODGES and LAVENDER, JJ., concur.